IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. 20-cv-1377-RJD ) |
| STEVEN MUMBOWER, et al., | ) ) |
|     Defendants. | ) ) ) |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on summary judgment motions by Defendants (Docs. 90 and 98). Plaintiff, currently incarcerated at Dixon Correctional Center, filed this lawsuit pursuant to 42 U.S.C. §1983. He alleges that Defendants violated his First and Eighth Amendment rights of the U.S. Constitution at Pinckneyville Correctional Center from October 10, 2020 through December 30, 2020 (Doc. 18). This case is not to be confused with another one of Plaintiff's cases pending before the undersigned (of which there are four total) that make similar claims against many of the same defendants, but the allegations take place from August 7-October 9, 2020. S*ee* Case No. 20-cv-1068-RJD.

There are 33 defendants in this matter. Thirty-two defendants are employed by the Illinois Department of Corrections ("IDOC"). The remaining defendant (Lori Patterson) is employed by Wexford Health Sources, Inc., a private company that provides healthcare to inmates of the IDOC. Plaintiff alleges that all defendants told him to refuse his psychotropic medications and to sign medication refusals, threatening to make false disciplinary charges against him if he did not

comply. Plaintiff also alleges that the defendants made these threats to Plaintiff as retaliation against him for filing grievances and reporting staff misconduct. Defendants Reid and Brown allegedly told Plaintiff that "a lot" of his grievances had been destroyed to prevent him from receiving medications and mental health treatment, and to prevent him from successfully bringing lawsuits.

Plaintiff filed this suit on December 30, 2020. The Court struck Plaintiff's original Complaint because it was illegible. Plaintiff filed an Amended Complaint on May 27, 2021. After the Court conducted a preliminary review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. §1915A, Plaintiff's case proceeded on the following claims:

> Count 1:  Eighth Amendment deliberate indifference claim against all defendants (Mays, Brown, Rodman, Bell, Lueker, Vandekerkhove, Hankins, Hagston, Tomshack, Spiller, Johnson, Porter, Dudek, Cacioppo, Reid, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Wanack, Schlott, Hale, Shirley, O'Leary, Bryant, Mumbower, Rich, Harriss, Bartolotti, Petitjean, and Patterson) for interfering with and/or denying Plaintiff mental health treatment.
>
> Count 2:  First Amendment retaliation claim against all defendants for interfering with and/or denying Plaintiff mental health treatment and threatening him in retaliation for Plaintiff's filing of grievances and lawsuits and reporting staff conduct.
>
> Count 3;  First Amendment retaliation claim against Reid and Brown for destroying Plaintiff's grievances in retaliation for Plaintiff's filing of grievances and lawsuits and reporting staff conduct.

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The parties agree that Plaintiff did not fully exhaust any grievances against Defendants prior to filing suit on December 30, 2020. Defendants filed Motions for Summary Judgment on the Issue of Administrative Remedy Exhaustion (Docs. 90, 91, 98, 99).

In his written Response (Doc. 105) to Defendants' Motions, Plaintiff contends that he is fully aware of the exhaustion process, had no reason not to fully exhaust his claims in this matter, but his efforts to exhaust were thwarted because prison staff destroyed or otherwise refused to respond to his grievances.  Plaintiff explains that because staff at Pinckneyville failed to respond to his grievances, he had no way of fully exhausting those grievances by sending them to the Administrative Review Board ("ARB").  His counselor during the relevant time was Micah Hallman.  Counselor Hallman would, on occasion, be assigned to other duties and Counselors Reid and Brown would pick up Plaintiff's grievances and destroy them.  Plaintiff then moved to another cell house for a short time and he received responses to grievances that he submitted during that time.  Plaintiff urges the Court to recognize that just because some of his grievances were being processed does not mean the grievance process was available to Plaintiff at all times.

## Legal Standards

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at

248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).  "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."  *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).  "[A]ll dismissals under § 1997e(a) should be without prejudice."  *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved.  20 ILL. ADMIN. CODE § 504.810(a).  If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances."  *Id*. §504.830(e).  The CAO then advises the inmate of a decision on the grievance.  *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision.  *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).  The ARB will submit a written report of its

findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e). Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). However, an inmate is only required to exhaust the administrative remedies that are available to him. *Lewis v. Washington,* 300 F.3d 829,833 (7th Cir. 2002). Administrative remedies are unavailable to an inmate when prison officials do not respond to his grievance(s). *Id*.

## Plaintiff's Relevant Grievances

The parties submitted numerous documents from Plaintiff's grievance records for the Court to consider. The following grievances are relevant to the Defendants' motions.

**Grievance 2045-08-20, dated August 22, 2020 (Doc. 99-1, p. 138-142)**

Plaintiff wrote that a mental health staff member (not a defendant) refused to see him but falsified her records to make it look like she did. This grievance was denied by the Warden at Pinckneyville and the ARB.

**Grievance 2186-09-20, dated September 8, 2020 (Doc. 105-1, p. 9-11)**

Plaintiff wrote that in August and September 2020 he submitted grievances regarding staff members who were destroying his grievances and telling him to refuse to speak with mental health staff so that his psychotropic medications would not be renewed. Plaintiff explained that the staff members he identified in the grievances (including Rodman, Hale, Lueker, Bailey, Bell, Hagston, Dudek, Wanack, Peek, Tomshack, Shirley, Cacioppo, Vandekerkhove, Hankins, Petitjean) were

retaliating against him. Plaintiff received a response from Counselor Brown on September 9, 2020 that stated "Per grievance officer, you currently have grievance #2045-08-20 pending at second level concerning mental health. You do not have any other open grievances." Plaintiff did not submit this grievance for further review.

**Grievance 2392-10-20, dated October 5, 2020 (Doc. 91-1 p. 15)**

The grievance office received this grievance "regarding grievance responses" and forwarded it to Counselor Hallman for review. He responded on November 4, 2020 that "[a]ll grievances submitted by [Plaintiff] have been processed according to policy and procedure. All answered grievances have been returned to the grievant. Currently, there are no open grievances for the dates cited by the grievant." Plaintiff did not submit this grievance for further review.

**Grievance 2539-10-20, dated October 27, 2020 (Doc. 91-1 p. 15)**

The grievance office received this grievance "regarding grievance response" and forwarded it to Counselor Hallman for review. He responded on November 23, 2020 that "[a]ll grievances submitted by [Plaintiff] have been processed according to policy and procedure. All answered grievances have been returned to the grievant. Currently, there are no open grievances for the dates cited by the grievant. Grievance handed back to offender at cell." Plaintiff did not submit this grievance for further review.

**Grievance 2885-12-20, dated December 14, 2020 (Doc. 105-1, p. 63-67)**

Plaintiff wrote that in October, November, and December 2020 he submitted multiple grievances at Pinckneyville regarding prison staff (Porter, Spiller, Johnson, Adams, Patterson, and others) keeping him from taking his psychotropic medications. Plaintiff never received grievance numbers or receipts. Counselors Reid and Brown told him that he was being transferred to another prison for filing grievances. Counselor Hallman wrote that "all grievances submitted by

grievant have been processed according to policy and procedure. All answered grievances have been returned to the grievant." The grievance was denied by the Warden at Pinckneyville on February 5, 2021. The ARB denied it on May 10, 2021.

**Grievance 115-01-21, dated January 7, 2021 (Doc. 91-2, p. 145-150)**

Plaintiff wrote that on January 7, 2021, he encountered Sergeant Bartolotti in the R3 cell house. Bartolotti told him that various officers were going to have Plaintiff transferred out of Pinckneyville because of Plaintiff's grievances and lawsuits. Bartolotti had also told Officers Jurkowski and Schlott "months ago" to treat Plaintiff "like s***" and to not give him his psychotropic medications. Officer Hankins told Sergeant Bartolotti that he saw Plaintiff "months ago" and told Plaintiff there were officers watching to make sure Plaintiff refused to take his psychotropic medications. Sergeant Bartolotti also knew that Plaintiff had submitted multiple grievances at Pinckneyville in the summer of 2020 that were never returned to him. Plaintiff explained that from summer 2020-December 2020, multiple staff members (Bartolotti, Shirley, Hankins, Bell, Jurkowski, Schlott, Redman, Rich, Brock, Bailey, Johnson, Patterson, Dudek, Porter, Hale, Vandekerkhove, Cacioppo, Petitjean, and others) were forcing him to refuse his psychotropic medications, but he never received responses to the grievances that he submitted regarding these incidents.

The grievance officer recommended that Grievance #115-01-21 be denied because Plaintiff failed "to provide any dates within the 60 day time required by Department Rule 504.810." The grievance officer further noted that Plaintiff had mentioned "multiple staff from previously filed grievances." The Warden denied the grievance, and the ARB instructed Plaintiff to "provide dates when incidents occurred." Defendant Bartolotti concedes this grievance exhausts Plaintiff's administrative remedies in Count II against him.

**Grievance 193-01-21, dated January 14, 2021 (Doc. 99-1, p. 127-133).**

Defendant Bartolotti concedes this grievance, along with Grievance 115-01-21, exhausts Plaintiff's administrative remedies in Count II against him. Plaintiff writes that Defendant Bartolotti "has it out for [Plaintiff]." The Warden at Pinckneyville denied this grievance because Plaintiff's allegations could not be substantiated. The ARB denied this grievance, stating it did not "meet Department Rule 504.810."

**Grievance #292-01-21, dated January 24, 2021 (Doc. 91-2, pp. 160-164)**

Plaintiff writes that Correctional Officer Blaylock (not a defendant in this case) told Plaintiff to tell his [Plaintiff's] psychiatrist that he was stable and did not need his psychotropic medications, or Plaintiff would be beaten, and video camera footage of the assault would be destroyed by Internal Affairs. Sergeant Bartolotti and other correctional officers (Vandekerkhove, Hankins, Hagston, Spiller, Johnson, Porter, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Schlott, Hale, Petitjean, and Harris) gave Plaintiff the same warning. Plaintiff's counselor responded to this grievance after speaking with C/O Blaylock; Blaylock denied the allegations. The Warden at Pinckneyville denied the grievance. The ARB ultimately denied the grievance on the merits on May 6, 2021, finding that Pinckneyville appropriately addressed the allegations. Defendants Bartolotti, Vandekerkhove, Hankins, Hagston, Spiller, Johnson, Porter, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Schlott, Hale, Petitjean, and Harris concede that this grievance sufficiently exhausts Plaintiff's administrative remedies against them on Count I.

### *Pavey* Hearing

On August 23, 2022, the Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The Court, having noted that multiple IDOC Defendants conceded Plaintiff exhausted his administrative against them via grievances that were submitted *after* Plaintiff filed

suit, asked the parties to clarify the date by which they contended Plaintiff was required to have exhausted his administrative remedies. Counsel for the IDOC Defendants explained that it was their position that Plaintiff was required to have exhausted on or before December 30, 2020 (the date Plaintiff filed suit) but they had also provided alternative arguments in their motion that assumed Plaintiff could continue the exhaustion process until May 27, 2021 (the date Plaintiff filed his Amended Complaint). Counsel for Lori Patterson stated that Plaintiff should have exhausted by December 30, 2020. Plaintiff stated that he had nothing to add to this issue.

Plaintiff testified, along with Counselor Hallman and Margaret Madole, a representative from the ARB.

**Plaintiff's testimony**

Micah Hallman was Plaintiff's counselor during the relevant time period, but when Counselor Hallman was on vacation or otherwise unavailable, Counselors Reid and Brown would intercept and destroy Plaintiff's grievances containing subject matter that "would get staff sued." In October-December 2020, Plaintiff submitted over five grievances related to the allegations in this lawsuit, and Counselors Reid and Brown destroyed all of them at times when Counselor Hallman "wasn't there." Plaintiff explains that he should have received a receipt for those grievances within 1-2 days of placing them in the grievance box in his unit, and "if you don't get it in two days, it's not processed." He never received a receipt or grievance number for the grievances related to the allegations in this lawsuit. He believes Reid and Brown destroyed them because they would talk to Plaintiff about the statements he made in those grievances. Plaintiff was asked by counsel for the IDOC Defendants whether he ever tried re-filing the grievances while Hallman was picking up his grievances. Plaintiff answered "Yes, I put them in the grievance box." Plaintiff has no evidence that Counselor Hallman destroyed any of his grievances.

Every time Plaintiff told Counselor Hallman about the destruction of his grievances, Hallman would say "I prefer you not to file grievances just let me speak to the staff." Plaintiff told Counselor Hallman what he [Counselor Hallman] was doing "wasn't right" and "if I found out he was involved in the destruction of my grievances I would file a lawsuit" In response, Counselor Hallman told Plaintiff "that he knew what to do to get out of a lawsuit and he was going to put info in my record about threatening to file a false lawsuit." Plaintiff has not filed suit against Counselor Hallman because he has "no evidence against him."

Plaintiff explained that his "grievances about grievances" (e.g., #2186-09-20, #2392-10-20, #2539-10-20) were not actually grievances, but request slips inquiring about the status of his previously submitted grievances that were intercepted and destroyed by Counselors Reid and Brown. He did not submit those grievances for further review to the ARB because it was futile; the ARB could do nothing regarding the missing grievances if the facility said they did not exist.

The undersigned asked Plaintiff if he had submitted any grievances regarding Defendants Reid and Brown. Plaintiff testified that he did, and those grievances were sent to the ARB.[1]

**Micah Hallman's testimony**

Counselors at Pinckneyville pick up inmates' grievances every weekday from a box "at the front of the wing." The grievance goes to the grievance officer who logs it and then sends it to the counselors. Within 30 days, the inmate's counselor responds. Once the inmate receives the counselor's response, he can submit it to the grievance officer. Grievances that are submitted over the weekend are picked up on Monday by a counselor. If Mr. Hallman had taken a vacation,

---

[1] In Grievance 2885-12-20, Plaintiff stated that Counselors Reid and Brown told him that he was being transferred to another prison for filing grievances. This grievance was submitted to the ARB, but after Plaintiff had already filed this lawsuit.

other counselors would collect the grievances and not necessarily the same counselor every day, just "whoever was available." Mr. Hallman does not recall taking a vacation from October-December 2020. He likely took a few days "here and there for the holidays." Grievances are not collected on holidays.

Mr. Hallman has never purposefully refused to respond to a grievance. No one has ever told him not to respond to a grievance. He has never heard of a counselor or grievance officer refusing to respond to a grievance. He has never heard of counselors destroying grievances. He never told Plaintiff to stop filing grievances.

In December 2020, Plaintiff called to Mr. Hallman thru his cell. Plaintiff had previously yelled out thru the cell door "stop throwing my grievances away." On this occasion, however, Plaintiff said "I know you're not throwing them away, I need you to throw them away to help my case." Mr. Hallman told Plaintiff "I would not do that they would be processed according to our policy and procedures."

Mr. Hallman has never been named in any of Plaintiff's lawsuits. Plaintiff has, however, named him in a grievance.

Mr. Hallman has been with IDOC for nine years. Prior to becoming a counselor he worked as a correctional officer, and he is currently able to work overtime as a correctional officer. Counselors Reid and Brown were also correctional officers.

**Margaret Madole**

Plaintiff asked Ms. Madole if grievances by inmates inquiring about the status of other grievances (i.e., "grievances about grievances") would be given any consideration by the ARB if prison staff said the alleged missing/lost/destroyed grievances did not exist. Ms. Madole confirmed that "grievances about grievances" would not be further investigated by the ARB if the

prison claimed the missing/lost/destroyed grievances did not exist. The ARB would have no way to investigate and would have to rely on representations by prison staff.

## Discussion

The Court recognizes that it is Defendants' burden to establish that there is no genuine issue of material fact regarding whether Plaintiff exhausted his administrative remedies. Defendants have established-and Plaintiff agrees-that prior to filing suit on December 30, 2020, Plaintiff did not fully exhaust a grievance related to the allegations in this lawsuit.[2] The Court also recognizes that Plaintiff was only required to exhaust the administrative remedies that were available to him, and the Court must resolve all plausible inferences in Plaintiff's favor. At a *Pavey* hearing, however, the Court is allowed to "determine credibility." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The undersigned did just that. Plaintiff's testimony regarding why he did not fully exhaust a grievance prior to filing suit contains too many implausibilities. The Court does not find Plaintiff to be credible.

Plaintiff testified first, and the undersigned asked him to explain the steps he took to exhaust his administrative remedies. For the sake of clarity, the undersigned asked him to first discuss the grievances that are in the record and then explain the grievances that are not in the record and were therefore not fully exhausted. Plaintiff testified that the grievances in the record were "processed by counselors who weren't causing me problems." Then, while discussing the grievances that are not in the record, Plaintiff explained that Counselors Reid and Brown intercepted and destroyed his grievances while Counselor Hallman was on vacation or otherwise

---

[2] Plaintiff had to exhaust his administrative remedies prior to filing suit on December 30, 2020; except for certain circumstances, filing an Amended Complaint does not change the exhaustion deadline. *See Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).

performing other duties.  Throughout the hearing, Plaintiff made repeated references to the fact that he has never named Hallman in any of his lawsuits.  Plaintiff also testified that when Counselor Hallman returned to his duties, Plaintiff tried re-filing the grievances that were intercepted and destroyed by Counselors Reid and Brown.  The Court thus infers that Counselor Hallman was one of the counselors who did not cause Plaintiff problems.  Given that inference, the Court considers Counselor Hallman's December 30, 2020 entry in the counseling summary.

> Seen offender at cell. Offender wanted to know why I was throwing his grievances away. I assured the offender that all grievances are processed according to policy and procedure. Offender then explained to me that he knew I was not throwing his grievances away but he wanted to make it look like I was for his lawsuit.

(Doc. 91-1, p. 14).  Two weeks later, Counselor Hallman made another entry: "[s]een at cell. Offender told me to throw his grievances away.  I advised him that any and all grievances would be processed according to policy and procedure." (*Id*.).

Plaintiff seemed to anticipate that these entries would be an issue at the hearing; the undersigned pointed to those entries in an order following a *Pavey* hearing in February 2022 where Plaintiff testified that Counselor Reid (the same Counselor Reid in this case who is a Defendant and allegedly destroyed Plaintiff's grievances from October-December 2020) refused to respond to two of Plaintiff's grievances in May and June 2020.  *Hoskins v. Shirley, et al*., Case No. 20-cv-560, 2022 WL672462, *6 (S.D.Ill. Mar. 7, 2022).  At the hearing in *this* case, and without first being asked about Counselor Hallman's entries, Plaintiff testified as follows.

> Every time I saw Counselor Hallman and told him about [Reid and Brown destroying grievances], he told me "I prefer you not to file grievances just let me speak to the staff."  I told him what he was doing wasn't right and if I found out he was involved in the destruction of my grievances I would file a lawsuit.  He told me he knew what to do to get out of a lawsuit and he was going to put info

Page **13** of **18**

> in my record about threatening to file a false lawsuit…. I don't know if he was destroying them….Reid and Brown were the ones not processing them.  They knew what my grievances were about and I never received them back.

The Court, having assessed Plaintiff's demeanor throughout the hearing, does not find this testimony to be a credible explanation for Counselor Hallman's entries.  Though he has sued dozens of other staff members at Pinckneyville, Plaintiff has never sued Counselor Hallman.  Moreover, in his Response to Defendants' Motions, Plaintiff contends that Counselor Hallman explained the "I prefer you not to file grievances" remark-it was a lot of work responding to a grievance that named dozens of people, because Counselor Hallman would then have to talk to all of those people and they would think he was helping Plaintiff with his lawsuit (Doc. 105, p. 13). Plaintiff further contends that Hallman offered to informally talk to the correctional officers who were threatening Plaintiff and try to get them to stop.  Comparing Plaintiff's testimony to his written Response, it belies reason to infer that Plaintiff would threaten Counselor Hallman (a counselor who was not causing Plaintiff problems) by saying "what [you are] doing [isn't] right and I would file a lawsuit" because Hallman said "I prefer you not to file grievances."  Counselor Hallman denied telling Plaintiff not to file grievances, and the Court finds his testimony to be credible.

Hallman's conduct is not at issue in this case, either in the substance of Plaintiff's allegations or in Plaintiff's efforts (or lack thereof) to exhaust.  The conflicting testimony between Plaintiff and Counselor Hallman does not create a genuine issue of material fact in this case.  It is simply one more reason why the undersigned does not find Plaintiff credible when he attempts to explain why there are no grievances fully exhausted by December 30, 2020 in the record that (either individually or collectively) refer to all 33 Defendants in this case.  As previously noted

by the undersigned in Case #20-cv-560, Counselor Hallman's entry leads the Court to the logical conclusion that Plaintiff was attempting to bolster his claim that certain counselors intercepted and destroyed certain grievances. *Hoskins v. Shirley, et al.*, Case No. 20-cv-560, 2022 WL672462, *6 (S.D.Il. Mar. 7, 2022).   A complicated claim, certainly, but no less complicated than meeting all exhaustion requirements for all 33 Defendants.

Ultimately, the Court's credibility determination rests on numbers.  Plaintiff testified that he submitted at least five grievances (and assures the Court that within those five grievances, he included all necessary information for all 33 Defendants) between October-December 2020 that were intercepted and destroyed by Counselors Reid and Brown.  He then attempted to re-submit those grievances when Hallman returned to picking up grievances.  There were at least 62 days where Counselor Hallman might have picked up one of Plaintiff's grievances between October 1, 2020-December 30, 2020 (grievances were not picked up on holidays or weekends). Consequently, Plaintiff is asking the Court to find it plausible that within 62 days, he attempted to submit a grievance regarding this lawsuit on approximately 10 occasions, but on every single one of those occasions either Counselor Reid or Brown intercepted and destroyed the grievance (even on the occasions Plaintiff thought Counsel Hallman had returned to his duties).

Plaintiff claimed that Reid and Brown were destroying his grievances that would get employees in trouble.  In September 2020, Plaintiff submitted and fully exhausted a grievance regarding a mental health worker who falsified her records to reflect that she treated him.  The Court acknowledges Plaintiff's argument that just because some grievances were destroyed does not necessarily mean all grievances were destroyed, but does not find this argument credible in light of the other evidence in the record.   The Court finds it implausible that Counselors Reid and Brown intercepted and destroyed all of Plaintiff's grievances about this lawsuit (at least five, and

some or all were re-submitted), yet the September 2020 grievance about the mental health care worker and Plaintiff's "grievances about grievances" were logged and received responses. Apart from Plaintiff's testimony (which the Court does not find credible) and his "grievances about grievances," nothing in the record even hints at such a coordinated conspiracy to keep Plaintiff from filing this lawsuit against 33 individuals.

Plaintiff filed this suit on December 30, 2020 (a Wednesday). Starting January 4, 2021 (the following Monday), 12 new grievances are logged in Plaintiff's counseling summary on the next 4 out of 10 days. On January 14, 2021, Counselor Hallman notes that Plaintiff has again asked him to destroy his grievances. Plaintiff testified that in January 2021 he was on crisis watch for approximately four days and then in February 2021, he was in quarantine for fourteen days. Plaintiff claims that he was able to start submitting grievances in January 2021 because he moved from the R-3 cell house into a different cell house where counselors did not intercept and destroy his grievances. However, his counseling summary reflects that 15 grievances were logged before he moved from the R-3 cell house on January 26, 2021 (Doc. 91-1, p. 13, 14).

In sum, Plaintiff's testimony regarding the destruction of his grievances by Reid and Brown is not credible. The evidence in the record reflects that administrative remedies were available to him at all relevant times, and Plaintiff chose to file suit and then submit (some) grievances. Accordingly, Defendant Patterson's Motion for Summary Judgment (Doc. 90) is GRANTED .

The IDOC Defendants' Motion (Doc. 98) is more complicated. Defendant Bartolotti did not ask the Court to enter summary judgment in his favor, instead conceding that Plaintiff exhausted Counts I and II against him. Defendants Vandekerkhove, Hankins, Hagston, Spiller, Johnson, Porter, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Schlott, Hale, Petitjean, and Harris concede that Plaintiff exhausted his administrative remedies against them on Count I. At

the *Pavey* hearing, counsel for the IDOC Defendants clarified that the concessions were only made in case the undersigned ruled that Plaintiff's deadline for exhaustion was May 30, 2021. This clarification is not stated in their Motion and the Court cannot expect Plaintiff to have been prepared to address it. However, the record reflects that for the same reasons Plaintiff failed to exhaust his administrative remedies against the other Defendants, he did not exhaust his administrative remedies against Bartolotti on Counts I and II, nor against Vandekerkhove, Hankins, Hagston, Spiller, Johnson, Porter, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Schlott, Hale, Petitjean, and Harris on Count 1. Regardless, the Court will not enter summary judgment in favor of Defendants who conceded that it should not be granted in their favor, despite any clarification that was made at the *Pavey* hearing, without giving Plaintiff an opportunity to object pursuant to Federal Rule of Civil Procedure 56(f).   On or before **October 17, 2022**, Plaintiff shall submit any objections to granting summary judgment in favor of Defendant Bartolotti on Counts I and II and in favor of Vandekerkhove, Hankins, Hagston, Spiller, Johnson, Porter, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Schlott, Hale, Petitjean, and Harris on Count 1. **Plaintiff shall submit his objections in a brief that does not exceed 25 pages (not counting exhibits). However, he shall not submit any documents as exhibits that have already been submitted in this case.**

In the meantime, however, summary judgment is granted in favor of Defendants Mays, Brown, Rodman, Bell, Lueker, Tomshack, Dudek, Cacioppo, Reid, Wanack, Shirley, O'Leary, Bryant, Mumbower, Rich, and Patterson and all claims against them are DISMISSED WITHOUT PREJUDICE.  Summary judgment is granted in favor of Defendants Vandekerkhove, Hankins, Hagston, Spiller, Johnson, Porter, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Schlott, Hale, Petitjean, and Harris on Count II and Plaintiff's claims against every Defendant in Count II except

Bartolotti are DISMISSED WITHOUT PREJUDICE.

**Plaintiff is WARNED that if he does not file objections to granting summary judgment in favor of Defendant Bartolotti on Counts I and II and in favor of Defendant Vandekerkhove, Hankins, Hagston, Spiller, Johnson, Porter, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Schlott, Hale, Petitjean, and Harris on Count 1 as ordered by the undersigned, those claims will be DISMISSED WITHOUT PREJUDICE.   Thirty days after Plaintiff files his objections (if any), Defendants Bartolotti, Vandekerkhove, Hankins, Hagston, Spiller, Johnson, Porter, Bailey, Jurkowski, Peek, Brock, Adams, Baker, Schlott, Hale, Petitjean, and Harris SHALL file a Response.**

IT IS SO ORDERED.

DATED: September 12, 2022

*s/ Reona J. Daly*
**Hon. Reona J. Daly
United States Magistrate Judge**